UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUSTIN SAMUELS,

                Plaintiff,

-against-

NYC WOMEN'S FILM FUND,

                Defendant.

23-cv-10045 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Justin Samuels is an "aspiring filmmaker with an unfinished film that he wishes to complete." Dkt. 28 ¶ 8. In 2023, proceeding *pro se*, he sued the New York City Women's Film Fund, which administers grants to filmmakers, arguing that the Fund's "preference" for women and transgender artists violates the Civil Rights Act, the United States Constitution, and the New York State Human Rights Law. *See* Dkt. 1 at 1; *see also* Dkt. 28 ¶¶ 12–14. On August 9, 2024, this Court granted the Fund's motion to dismiss for lack of jurisdiction after finding that Samuels had not plausibly alleged standing to sue, but offered Samuels the opportunity to amend his complaint. *Samuels v. New York City*, 2024 WL 3742544, at *2 (S.D.N.Y. Aug. 9, 2024). Samuels did so, and the Fund moved to dismiss the amended complaint on the same ground. *See* Dkts. 28, 32.

## LEGAL STANDARDS

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt Street Recovery Corp. v. Hellas Telecommc'ns, S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The plaintiff bears the burden of 'alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue.'" *Id.* at 417 (alteration in original) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). "In assessing the plaintiff's assertion of standing," a court must follow the usual practice of accepting all material allegations as true and construing the complaint in the plaintiff's favor. *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally 'to raise the strongest arguments [it] suggest[s].'" *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (alterations in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (applying same standard on Rule 12(b)(1) motion).

## DISCUSSION

As the Court explained in dismissing Samuels's original complaint, *see Samuels*, 2024 WL 3742544, at *2, Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To have standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*

When challenging an allegedly discriminatory program, like Samuels does here, there are two ways to establish standing. First, Samuels can allege that he applied to and was rejected by the program. *See Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 113 (2d Cir. 2024). Second, he can allege "that [he is] able and ready to apply" but that doing so "would be a 'futile gesture.'" *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977)). The Court dismissed Samuels's complaint after finding that he had alleged neither but granted Samuels the opportunity to amend his complaint accordingly. *Samuels*, 2024 WL 3742544, at *2.

In his amended complaint, Samuels doesn't allege that he applied for the program. Instead, he attempts to take the second route by alleging that "[d]espite being qualified, [he] is effectively barred from applying to the fund because of his gender, which is neither female nor transgender. The explicit preference for women and transgender individuals makes it futile for [Samuels], as a cisgender man, to apply." Dkt. 28 ¶ 11. In its motion to dismiss, the Fund argues that Samuels still hasn't plausibly alleged his eligibility for the program nor the futility of applying. Dkt. 33 at 8–11.

The Court agrees. As the Court explained in dismissing the original complaint, futility can be shown by an employer's "consistent discriminatory treatment of actual applicants, by the manner in which [it] publicizes vacancies, [its] recruitment techniques, [its] responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of [its] work force from which [it] has discriminatorily excluded members of minority groups." *Int'l Bhd. of Teamsters*, 431 U.S. at 365. For this reason, the Court instructed Samuels to "include any facts he can that would show applying would be futile, such as facts about how the program is advertised, what its requirements are, and who has received grants in the past." *Samuels*, 2024 WL 3742544, at *2. Samuels's amended complaint contained no such facts.

The Fund, by contrast, says that the program doesn't exclude cisgender men and points to the Fund's website, of which the Court takes judicial notice. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" (citation omitted)). The website provides that "[a]nyone can apply and be awarded a grant regardless of actual or perceived sex, gender, gender identity or gender expression." *NYC Women's Fund for Media, Music and Theatre*, N.Y. Found. for the Arts, https://www.nyfa.org/awards-

grants/nyc-womens-fund-for-media-music-and-theatre/ (last visited Jan. 2, 2025). Samuels doesn't dispute in his opposition papers that cisgender men can and have received grants from the Fund; instead, he submitted a letter to "inform the [C]ourt that despite fulfilling all the requirements to apply for a film program in New York City, . . . [he had] decided not submit [his] application due to ongoing sex discrimination against men in the industry." Dkt. 36 at 1. Samuels's decision not to apply, however, doesn't make applying futile.

Moreover, although Samuels says that he "fulfill[s] all the requirements to apply for a film program in New York City," *see* Dkt. 36 at 1, he doesn't specifically allege that he fulfills the requirements for *this* program. According to the Fund's website, projects are eligible for a grant if they feature "a prominent woman perspective; and/or include[] a woman-identified director and/or producer and/or writer/songwriter and/or engineer (for recordings) and/or woman-identified protagonist(s) or lead musical role." *NYC Women's Fund for Media, Music and Theatre*, N.Y. Found. for the Arts, https://www.nyfa.org/awards-grants/nyc-womens-fund-for-media-music-and-theatre/ (last visited Jan. 2, 2025). Samuels doesn't challenge this subject-matter requirement, nor does he allege that his project meets it, so he hasn't shown that he would "meet the qualifications to [be awarded the grant] but for the alleged artificial barriers to entry." *See Dowdy v. N.Y.C. Dep't of Sanitation*, 2023 WL 6258536, at *6 (S.D.N.Y. Sept. 26, 2023).

## CONCLUSION

Accordingly, the complaint is dismissed. The Clerk of Court is respectfully directed to terminate Dkt. 32 and close this case.

SO ORDERED.

Dated: January 2, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge